UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| UNITED STATES OF AMERICA<br>ex rel. DR. KENT TAKEMOTO, | REPORT AND<br>RECOMMENDATION |
| Plaintiff-Relator | 11-CV-00613-WMS-JJM |
| v. | |
| ACE, LTD., et al., | |
| Defendants | |

_____

This action has been referred to me by Hon. William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [153].[1]  Before me is defendants' Joint Motion [260] to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. ("Rules") 8(a), 9(b), and 12(b)(6). Oral argument was held on June 3, 2015 [313].  For the following reasons, I recommend that the Joint Motion be granted.[2]

## BACKGROUND

On July 18, 2011, Dr. Kent Takemoto (the "Relator")[3] commenced this *qui tam* action on behalf of the United States pursuant to the False Claims Act ("FCA"), 31

---

[1]   Bracketed references are to the CM/ECF docket entries.

[2]   While defendants have also filed several other motions [261, 262, 263, 264, 265, 268, 272, 286], those motions become moot if my recommendation to grant the Joint Motion is adopted.

[3]   "[A] private person (the relator) may bring a *qui tam* civil action for the person and for the United States Government . . . . in the name of the Government." Vermont Agency of Natural Resources v. United States ex rel. Stevens, 529 U.S. 765, 769 (2000).

U.S.C. §§3729 *et seq.*, seeking to recover damages from defendants, including various insurance and holding companies, for their alleged failure to reimburse the government for payments made by the government to Medicare beneficiaries. Complaint [1]. On March 14, 2014, the United States elected not to intervene in the action [21].[4] By Order dated April 3, 2014 [22], Judge Skretny unsealed the Complaint and directed that it be served upon the defendants within 20 days.

On April 10, 2014 Dr. Takemoto moved for an extension of that deadline [23], stating that he intended "to substantially amend his complaint to narrow the number of defendants and add additional detail gathered since the complaint was filed". Relator's Memorandum of Law [23], p. 3.

**The Amended Complaint**

Instead of narrowing the number of defendants, on October 31, 2014 - over three years after filing the original Complaint - Dr. Takemoto filed an Amended Complaint [170] significantly increasing the number of defendants. The Amended Complaint contains the following relevant allegations:

> "2. This case involves Defendants' failure to comply with the obligations imposed on them by the Medicare Secondary Payer ('MSP') statute, 42 U.S.C. §1395y(b)(2).

---

[4] That election has no effect on my view of the case. *See* United States ex rel. Feldman v. van Gorp, 2010 WL 2911606, *2 (S.D.N.Y. 2010) ("Because the government may have a host of reasons for not pursuing a claim, courts do not assume that in each instance in which the government declines intervention in an FCA case, it does so because it considers the evidence of wrongdoing insufficient or the *qui tam* relator's allegations of fraud to be without merit").

3. Under the MSP statute, Medicare is not ultimately responsible for the cost of medical care provided to Medicare beneficiaries if a private insurance company (health insurance, liability insurance, no-fault insurance, workers' compensation insurance, etc.) is also liable to pay for those same medical expenses.

4. As a service to Medicare beneficiaries, and the health care providers who care for them, Medicare will initially and conditionally pay for such medical care if a private insurance company 'has not made or cannot reasonably be expected to make payment with respect to such item or service promptly.' 42 U.S.C. §1395y(b)(2)(A)(ii). This initial payment is expressly conditioned, however, on the requirement that once it is determined that another insurer should have paid those bills as the primary payer, then that other insurer will repay the Government (or ensure that the beneficiary or another third party does). *See* 42 U.S.C. §1395y(b)(2)(B)(ii); 42 C.F.R. §411.22.

* * *

45. If the primary plan pays settlement funds to a Medicare beneficiary or other party who has received or will receive conditional payments, that beneficiary or other party must repay Medicare within 60 days of the payment by the primary plan. 42 C.F.R. §411.24(h). If the Medicare beneficiary or other party does not repay Medicare within 60 days, then the primary plan must repay Medicare for the Conditional Payment. 42 C.F.R. §411.24(i)(1).

* * *

68. In every case where a Defendant Insurer knew or should have known that a Medicare beneficiary received a settlement, judgment, or award from said Defendant Insurer, the Defendant Insurer had an obligation to ensure that the Federal Government was repaid the full value of its conditional payments. 42 U.S.C. §1395y(b)(2)(B)(ii). To the extent that such repayment was not made by the beneficiary, beneficiary's attorney, or medical provider, it became the responsibility of said Defendant Insurer 60 days

>   after payment of settlement, judgment, or award. 42 C.F.R. §422.24(i).
>
> 69. Every year, Defendants issue a settlement, judgment, or award for tens of thousands of claims involving Medicare beneficiaries. (Medicare beneficiaries over 64 years old comprise 14% of the population, and beneficiaries under 65 years old comprise 3% of the population, for a total of 17%. Of persons over 64 years of age, 97% are Medicare beneficiaries). In only a small fraction of these cases did either the beneficiary or the primary payer make payments to CMS, as required by the MSP statute. Each time that a Defendant Insurer knew or should have known that it had issued a settlement, judgment, or award to a Medicare beneficiary and subsequently failed to repay, or ensure repayment to, CMS for the value of any conditional payments or foreseeable care furnished or to be furnished on behalf said beneficiary, it knowingly and improperly avoided an obligation to repay the Government, in violation of Section 3729(a)(1)(G) of the False Claims Act.
>
> 70. Defendants were aware of their obligations to make such payments, both due to the well-established nature of the MSP statute and because Dr. Takemoto repeatedly contacted Defendants and provided them with a detailed explanation of their rights and liabilities under the MSP statute.
>
> 71. Despite such knowledge, Defendants elected to continue to avoid their repayment obligations to the Government and inadequately provide for future medical expenses in settlements.
>
> 72. As a result of all of the Defendants' knowing misconduct, obligations to pay money to the Government have been knowingly avoided, and the United States Treasury has been damaged in an amount that cannot yet be finally determined but which amounts to many millions of dollars."

Arguing that the Amended Complaint fails to properly state a cause of action, defendants seek its dismissal.

ANALYSIS

A.     **Which Pleading Standard Governs?**

In moving to dismiss the Amended Complaint, defendants argue that "Rule 9(b)'s heightened pleading requirements apply to FCA claims". Defendants' Memorandum of Law [264-1], p. 10, *citing* United States ex rel. Panarello v. Kaplan Early Learning Co., 2014 WL 1315367 (W.D.N.Y. 2014) (Skretny, J.) and Gold v. Morrison Knudsen Co., 68 F.3d 1475 (2d Cir. 1995), cert. denied, 517 U.S. 1213 (1996).

In Gold, the Second Circuit held that "[i]t is self-evident that the FCA is an anti-fraud statute. *See* 31 U.S.C. §3729(a) ('false or fraudulent'; 'conspires to defraud'; 'intending to defraud') . . . . Thus, claims brought under the FCA fall within the express scope of Rule 9(b)." 68 F.3d at 1476-77. However, Gold was decided prior to the 2009 amendment to the FCA (the amendment is entitled the "Fraud Enforcement and Recovery Act", Pub. L. No. 111-21, 123 Stat. 1617), which added 31 U.S.C.A. §3729(a)(1)(G), upon which Dr. Takemoto bases his claims in this action.

Defendants argue that "'FERA' - the Fraud Enforcement and Recovery Act . . . did not create a new species of non-fraud related FCA claims". Defendants' Reply [308], p. 5 (emphasis in original). I disagree. "The title of a statute cannot limit the plain meaning of the text. For interpretive purposes, it is of use only when it sheds light on some ambiguous word or phrase." Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 212 (1998). *See also* Brotherhood of Railroad Trainmen v. Baltimore & O. R. Co., 331 U.S. 519, 528-29 (1947) ("titles are not meant to take the place of the detailed provisions of the text . . . . They are but

tools available for the resolution of a doubt. But they cannot undo or limit that which the text makes plain").

Section 3729(a)(1)(G) imposes liability upon "any person who . . . knowingly conceals *or* knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government"(emphasis added). The word "or" "is almost always disjunctive, that is, the words it connects are to be given separate meanings" (United States v. Woods, ___U.S.___, 134 S.Ct. 557, 567 (2013)), strongly suggesting that the "knowing avoidance" prong of §3729(a)(1)(G) does not require proof of fraud, and instead applies "regardless of whether such actions involve a falsehood". United States ex rel. Yannacopoulos v. General Dynamics, 652 F.3d 818, 836 n. 16 (7th Cir. 2011).[5]

While the statute requires knowing concealment *or* knowing and improper avoidance of an obligation to pay, the Amended Complaint repeatedly alleges that defendants "have knowingly concealed *and* knowingly and improperly avoided their obligation to pay or transmit money or property to the Government" ([170], ¶¶90, 98, 113, 119, 128, 146, 159, 167, 182, 194, 203, 220, 230, 236, 243, 250, 254 and 258, emphasis added). At oral argument, Dr. Takemoto's attorney, Robert King, requested leave of court to drop the "knowingly concealed" allegation "because . . . while we did not apparently do it perfectly, our intent was to abandon the allegations of fraud and strictly focus on a knowing avoidance claim in this case".[6] *See also*

---

[5] "Fraud connotes perjury, falsification, concealment, misrepresentation." Knauer v. United States, 328 U.S. 654, 657 (1946). "Not every . . . omission rises to the level of fraud". Gaidon v. Guardian Life Ins. Co. of America, 94 N.Y.2d 330, 350 (1999). "Even an intentional breach . . . is not fraud." In re Sasse, 438 B.R. 631, 648 (Bkrtcy. W.D.Wis. 2010).

[6] All quotations from oral argument are based on my chambers transcription of the digital recording.

Relator's Response [288], pp. 16, 18 ("Dr. Takemoto has pleaded only pure 'knowing avoidance' claims . . . . That is the only kind of claim Dr. Takemoto has pled here").

Since the Amended Complaint alleges more than §3729(a)(1)(G) requires, I will grant counsel's oral request to drop the allegations of knowing concealment, so as to "strictly focus on a knowing avoidance claim". As that claim does not require proof of fraud, it is not subject to the particularization requirement of Rule 9(b), which applies only to claims of "fraud or mistake". *See* United States ex rel. Sanchez v. Lymphatx, Inc., 596 F.3d 1300, 1304 (11th Cir. 2010) ("Because [plaintiff's FCA] retaliation claim did not depend on allegations of fraud, [her] complaint only needed 'a short and plain statement of the claim showing that [she was] entitled to relief.' [Rule] 8(a)"). Therefore, I conclude that Dr. Takemoto's "avoidance" claim is governed by the pleading requirements of Rule 8(a) rather than Rule 9(b).

However, §3729(a)(1)(G) also requires "knowing and improper" avoidance of a payment obligation. While Rule 9(b) states that "knowledge . . . may be alleged generally", "'generally' is merely a relative term that allows knowledge to be pleaded with less particularity than is required for the pleading of fraud", and "is not the equivalent of conclusorily". Krys v. Pigott, 749 F.3d 117, 129 (2d Cir. 2014). "Thus . . . plaintiffs must still plead the events which they claim give rise to an inference of knowledge." Id.

**B.    Does the Amended Complaint State a Plausible Claim for Relief?**

Although Dr. Takemoto need not plead with the specificity required by Rule 9(b) for fraud allegations, his Amended Complaint must still comply with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief".

"Rule 8 requires that a plaintiff provide facts sufficient to allow *each* defendant to have a fair understanding of what plaintiff is complaining about and to know whether there is a legal basis for recovery." Jackson v. Fischer, 2014 WL 6865132, *3 (W.D.N.Y. 2014) (Arcara, J.) (emphasis added).  This requirement is important, because the FCA "penalizes a person for his own acts, not for the acts of someone else".  United States v. Bornstein, 423 U.S. 303, 312 (1976). *See also* United States ex rel. Sanders v. North American Bus Industries, Inc., 2006 WL 361337, *2 (D.Md. 2006) ("Courts must determine a party's liability under the FCA based on the specific conduct of the party").

    The Amended Complaint groups related corporations together without differentiating as to the involvement of each - *e.g.*, [170] ¶¶10, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 23, 27, 28.  Such grouping violates Rule 8(a).  *See* In re Aluminum Warehousing Antitrust Litigation, 2015 WL 1344429, *3 (S.D.N.Y. 2015) ("Neither of the two complaints sets forth any specific facts that suggest any participation by any one of these specific entities in the allegedly unlawful conduct. Instead, the claims as to them are based solely on corporate proximity . . . . The fact that two separate legal entities may have a corporate affiliation does not alter [Rule 8's] pleading requirement.  In the absence of allegations that corporate formalities have been ignored, defendants are presumed to be legally separate"); Clayton's Auto Glass, Inc. v. First Data Corp., 2013 WL 5460872, *5 (E.D.N.Y. 2013) ("the Complaint refers to both defendants and their unnamed related entities collectively as 'First Data' . . . . Such 'group pleading' fails to give each defendant fair notice of the claims against it . . . and, thus, fails to satisfy . . . the notice pleading requirements of Rule 8"); De Jesus v. Sears, Roebuck & Co., Inc., 87 F.3d 65, 70 (2d Cir.), cert. denied, 519 U.S. 1007 (1996) ("To overcome the presumption of separateness afforded to related

corporations, Plaintiffs must come forward with the showing of actual domination required to pierce the corporate veil . . . . A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)").

Dr. Takemoto's failure to specify each defendant's involvement is hardly surprising in light of the troubling admissions made by Mr. King during oral argument. For example, when I pointed out that "the named defendants include . . . parent corporations"[7] and asked how we can "know from the allegations that those defendants . . . would have had any obligations under the False Claims Act as opposed to one of their subsidiaries", he responded that "[i]f in fact those defendants were truly holding companies and not operating companies and did not write insurance, then presumably they would not . . . . I am not making any kind of piercing the corporate veil argument here but exactly which companies did which things is far from clear at this point . . . . Sorting out which company on the front end before any discovery, which company did what is not an easy thing."

I then asked him whether there was a problem with "naming companies that you don't even know whether or not they did any of the type of activity that would even conceivably give rise to a False Claim Act violation", to which he replied "I don't think that is a problem here and the reason is because I have been involved in a number of cases like this with affiliated companies and you take the deposition of an employee and they don't even know who they work for, which company does what kind of business. That is something that I expect that we will learn in discovery."

---

[7] *See, e.g.*, Amended Complaint [170] ¶¶17, 18, 19, 20, 21, 23, 27, 28.

If that approach to pleading was ever acceptable, clearly it is no longer. "The day is past when our notice pleading practice . . . invited the federal practitioner to file suit first and find out later whether he had a case or not." Hale v. Harney, 786 F.2d 688, 692 (5th Cir. 1986). Accordingly, "[c]omplaints should not be filed in matters where plaintiffs intend to find out in discovery whether or not, and against whom, they have a cause of action". In re Silica Products Liability Litigation, 398 F.Supp.2d 563, 663 (S.D.Tex. 2005).[8]

Not only does the Amended Complaint fail to make allegations specific to each defendant, it also fails to properly allege the basis for a claim against *any* defendant. A party cannot "knowingly and improperly avoid" an obligation to repay the government unless there is first an obligation to repay - and as Dr. Takemoto admits, that obligation does not arise unless 1) the Medicare beneficiary has failed to reimburse the government, and 2) 60 days have elapsed since that failure. *See* Amended Complaint [170], ¶¶45, 68; Tomlinson v. Landers, 2009 WL 1117399, *5 (M.D.Fla. 2009) ("an insurer may be liable to Medicare if the beneficiary/payee does not reimburse Medicare for any amounts owed to Medicare within sixty (60) days").[9]

While the Amended Complaint does not identify any particular payment obligations which defendants have avoided (knowingly or otherwise), Dr. Takemoto argues that

---

[8] In fact, Mr. King's admissions raise concerns as to whether Rule 11 sanctions might be warranted, for the same reasons which I recommended in United States v. Allstate Insurance Company, et al., 12-CV-1015-WMS-JJM [154], to which objections are currently pending. However, since no party has moved for sanctions in this case, and since the relief that I am recommending here is in any event the same as I recommended in Allstate, I will not pursue that issue *sua sponte*.

[9] "If the beneficiary or other party receives a primary payment, the beneficiary or other party must reimburse Medicare within 60 days . . . . If Medicare is not reimbursed as required by paragraph (h) of this section, the primary payer must reimburse Medicare even though it has already reimbursed the beneficiary or other party." 42 C.F.R. §§411.24(h), (i)(1).

"allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge", and that he "has supplied information and belief ([Amended Complaint] ¶69), that permit a plausible inference that each of the defendants have incurred MSP repayment obligations under either the pleading standards of Rule 8(a) or 9(b)". Relator's Response [288], p. 26. However, *none* of the Amended Complaint's allegations (including ¶69) are made "upon information and belief", nor does Dr. Takemoto explain why the facts as to whether or not the beneficiaries have reimbursed the government - or which have done so - are "peculiarly within [defendants'] knowledge".

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[10] "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.

---

[10] For what it's worth (which is apparently not much), I continue to question how the "plausibility" standard can be reconciled with Rule 84, which states that the Appendix pleading forms - *none* of which meet that standard - "suffice under these rules and illustrate the simplicity and brevity which these rules contemplate". Although Rule 84 is scheduled to be repealed on December 1, 2015 as part of this year's Rules amendments, as of now it remains in effect. However, since the parties do not raise this point, I will apply the plausibility standard.

"[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." Iqbal, 556 U.S. at 686. The Amended Complaint offers no factual context or support for its conclusory allegation that "[i]n only a small fraction of these cases did either the beneficiary or the primary payer make payments to [the government]" ([170], ¶69). See United States ex rel. Customs Fraud Investigations, LLC v. Victaulic Co., 2014 WL 4375638, *14 (E.D.Pa. 2014) ("CFI provides no facts to support its assertions . . . that only a 'minuscule fraction' of Victaulic's pipe fittings for sale in the United States bear foreign markings"); Gallop v. Cheney, 642 F.3d 364, 368 (2d Cir. 2011) ("a complaint that merely tenders naked assertions devoid of further factual enhancement fails to meet [the plausibility] standard"); Kirch v. Liberty Media Corp., 449 F.3d 388, 398 (2d Cir. 2006) ("conclusory allegations . . . masquerading as factual conclusions will not suffice to defeat a motion to dismiss").

Moreover, even if there were factual support for the allegation that only a small fraction of Medicare beneficiaries repaid the government, it would still be unclear as to whether the remaining beneficiaries (who presumably did not repay) had received payments from any particular named defendant, or whether that defendant knew or should have known about the beneficiary's failure to repay - meaning that the obligation of any particular defendant to repay the government would be speculative at best. "To state a plausible claim, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." Financial Guaranty Insurance Co. v. Putnam Advisory Co., LLC, 783 F.3d 395, 401 (2d Cir. 2015); Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

If "the allegations in a complaint . . . are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." Robbins v. Oklahoma 519 F.3d 1242, 1247 (10th Cir. 2008).[11] Since the Amended Complaint fails to allege a basis for liability "above the speculative level" against any particular named defendant, it fails to plausibly state a cause of action, and should therefore be dismissed.

**C.      Should Dr. Takemoto be Allowed to Replead?**

While arguing that the Amended Complaint is legally sufficient, Dr. Takemoto suggests that "[i]n the alternative, should the Court determine that any of Dr. Takemoto's allegations are insufficient and require dismissal, the dismissal should be without prejudice, and Dr. Takemoto should be [given] an opportunity to cure any such deficiencies". Relator's Response [288], p. 56.

That bare-bones request does not warrant granting leave to replead. *See* WC Capital Management, LLC v. UBS Securities, LLC, 711 F.3d 322, 334 (2d Cir. 2013) ("It is within the sound discretion of the district court to grant or deny leave to amend . . . . Here,

---

[11]      Dr. Takemoto's citation to United States v. Baxter International, Inc., 345 F.3d 866 (11th Cir. 2003), cert. denied, 542 U.S. 946 (2004) (Relator's Response [288], pp. 24-25) is misplaced. Baxter held that "[i]n applying Rule 12(b)(6), a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the complainant can prove no set of facts in support of his claim which would entitle him to relief". 345 F.3d at 880 (*quoting* Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). However, that pleading standard has now been replaced by the "plausibility" requirement: "Conley's 'no set of facts' language has been questioned, criticized, and explained away long enough . . . . [A]fter puzzling the profession for 50 years, this famous observation has earned its retirement." Twombly, 550 U.S. at 562-63.

[plaintiff] conclusorily requested leave to amend in two sentences in its opposition to [defendant's] motion for judgment on the pleadings, without specifying what additional factual allegations it would include if leave were granted, or how an amended complaint would cure the deficiencies the District Court identified in its original complaint. Accordingly, the District Court acted within its discretion in denying the request for leave to amend"); Espinoza v. Dimon, et al., ___F.3d___, 2015 WL 3684972, **8-9 (2d Cir. 2015) (same).

Moreover, the statements made by his attorney at oral argument lead me to conclude that Dr. Takemoto lacked a good faith basis for the allegations of the Amended Complaint. Although I am not imposing sanctions, I can consider that factor in deciding whether to allow him to replead. See Cognex Corp. v. Microscan Systems, Inc., 990 F.Supp.2d 408, 417 (S.D.N.Y. 2013) ("the district court has the discretion to deny leave to replead if there is a good reason for it, such as . . . bad faith").

## CONCLUSION

For these reasons, I recommend that the Joint Motion [260] be granted and that the Amended Complaint be dismissed, with prejudice as to Dr. Takemoto, but without prejudice to the government's ability to assert claims on its own behalf.[12] In light of that recommendation, all other pending motions [261, 262, 263, 264, 265, 268, 272, 286] should be denied as moot, with leave to renew if my recommendation to grant the Joint Motion is not adopted.

---

[12] Dismissal of the Relator's Amended Complaint can have no preclusive effect as to the government, which is not a party to this action. See United States ex rel. Eisenstein v. City of New York, 556 U.S. 928, 931, 933 (2009) ("Although the United States is aware of and minimally involved in every FCA action, we hold that it is not a 'party' . . . unless it has exercised its right to intervene in the case . . . . To hold otherwise would render the intervention provisions of the FCA superfluous, as there would be no reason for the United States to intervene in an action in which it is already a party").

Unless otherwise ordered by Judge Skretny any objections to this Report and Recommendation must be filed with the clerk of this court by July 13, 2015 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Skretny.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  <u>Wesolek v. Canadair Ltd.</u>, 838 F. 2d 55, 58 (2d Cir. 1988); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider de novo arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. <u>Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: June 24, 2015

                                                          /s/ Jeremiah J. McCarthy
                                                          JEREMIAH J. MCCARTHY
                                                          United States Magistrate Judge